# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| GREGORY G. GRANT, | ) |
| Plaintiff, | ) Case No. 2:14-cv-01640-JCM-CWH |
| vs. | ) **ORDER** |
| NEVADA DISABILITY ADVOCACY AND LAW CENTER, | ) |
| Defendant. | ) |

On April 13, 2015, the United States Court of Appeals for the Ninth Circuit entered an Order vacating this Court's order of dismissal and judgment and remanding the case for this Court to consider whether Plaintiff Gregory P. Grant should be appointed a guardian ad litem. (Order (Doc. #14).) This Court subsequently entered an Order directing Plaintiff Grant to identify or provide to the Court a copy of the state court order declaring Plaintiff Grant incompetent. (Order (Doc. #20) at 2.) The Court stated that upon receipt of the information regarding the state court order declaring Plaintiff Grant incompetent, the Court would set a hearing to address Plaintiff Grant's claim of incompetency in this case. (*Id.*)

On June 19, 2015, Plaintiff Grant filed a response stating that he did not have access to his state court file. (Resp. to Court Order (Doc. #21) at 1.) However, Plaintiff Grant stated that he was found incompetent in the state district court case number 07C238597, which was on appeal to the Nevada Supreme Court in case number 63641. (*Id.*) This Court accessed the Nevada Supreme Court's public docket for case number 63641 and found that on July 17, 2015, the Nevada Supreme Court entered an Order of Affirmance holding that there was substantial evidence supporting the state district court's conclusion that Plaintiff Grant was competent to stand trial. *Gregory Gary Grant v. The State of Nevada*, No. 63641, at 2-3 (Nev. Jun. 17, 2015). The Nevada Supreme Court

acknowledged, however, that Plaintiff Grant had received treatment for mental illness, previously was found to be incompetent, and that doubts regarding his competency had delayed the state court case for several years. (*Id.* at 1-3.) A copy of the Nevada Supreme Court's Order of Affirmance is attached to this Order.

In light of Plaintiff Grant's inability to provide the Court with the requested information regarding his previous findings of incompetency, as well as his representations that he currently is incompetent, illiterate, and indigent, the Court finds that it is appropriate to appoint an attorney for the limited purpose of representing Plaintiff Grant at the competency hearing. Under "exceptional circumstances," the Court may request an attorney to represent a person who is unable to afford an attorney. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991) (quotation omitted); 28 U.S.C. § 1915(e)(1). "A finding of exceptional circumstances requires an evaluation of both the likelihood of success on the merits and the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the issues involved. Neither of these factors is dispositive and both must be viewed together before reaching a decision." *Terrell*, 935 F.2d at 1017 (quotation omitted).

Given that Plaintiff Grant's initiating documents related only to his request for a guardian ad litem and that he has not yet filed a complaint in this case, the Court is unable to evaluate the likelihood of success on the merits. Thus, the first factor is neutral. As for the second factor, given the unusual nature and complicated procedural posture of this case, the difficulties associated with obtaining the state court records regarding any previous incompetency findings, and Plaintiff Grant's representations regarding his current incompetency, the Court finds that it will be extremely difficult for Plaintiff Grant to represent himself at the competency hearing. Additionally, appointment of an attorney is justified as the competency hearing "will undoubtedly proceed more efficiently and effectively" if Plaintiff Grant has an attorney. *Johnson v. California*, 207 F.3d 650, 656 (9th Cir. 2000) (per curiam). The Court therefore finds exceptional circumstances exist warranting the appointment of an attorney to represent Plaintiff Grant for the limited purpose of the competency hearing.

IT IS THEREFORE ORDERED that this case is referred to the Pilot Pro Bono Program adopted in General Order 2014-01 for the purpose of identifying an attorney willing to be appointed

1  as a pro bono attorney for Plaintiff Grant.  The scope of the appointment will be for the limited
2  purpose of representing Plaintiff Grant at the hearing regarding Plaintiff Grant's claim of
3  incompetency.  The Court will schedule the hearing upon appointment of a pro bono attorney.
4       IT IS FURTHER ORDERED that the Clerk of Court must forward this order to the Pro
5  Bono Liaison.

7       DATED: August 19, 2015.

                                                        **C.W. Hoffman, Jr.**
                                                        **United States Magistrate Judge**

An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

Case 2:14-cv-01640-JCM-CWH   Document 25   Filed 08/19/15   Page 4 of 12

IN THE SUPREME COURT OF THE STATE OF NEVADA

GREGORY GARY GRANT,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 63641

FILED

JUL 17 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

*ORDER OF AFFIRMANCE*

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of first-degree kidnapping, battery with a deadly weapon, assault, making a bomb threat, and possession or transportation of a hoax bomb. Eighth Judicial District Court, Clark County; James M. Bixler, Judge.

This matter arose when appellant Gregory Grant kidnapped his neighbor because Grant believed his neighbor was a member of a cult that was trying to kill Grant. Doubts regarding Grant's competency delayed the proceedings for several years, but the district court eventually found Grant competent and the case proceeded to trial. The jury found Grant guilty on several counts,[1] and the district court adjudicated Grant guilty but mentally ill, sentenced Grant, and entered a judgment of conviction accordingly. Grant now appeals.

---

[1] The jury found Grant not guilty of attempted murder with the use of a deadly weapon.

SUPREME COURT
OF
NEVADA

(O) 1947A

15-21650

*Substantial evidence supports the district court's competency finding*

Grant first contends that substantial evidence does not support the district court's conclusion that Grant was competent to stand trial.

A criminal defendant is competent to stand trial if he understands the charges and proceedings and "has sufficient present ability to consult with" and assist his counsel in his defense. *Dusky v. United States*, 362 U.S. 402, 402 (1960) (internal quotation marks omitted); *see also* NRS 178.400(2) (defining "incompetent"). Grant does not claim that he did not understand the charges or proceedings, so the only issue is whether substantial evidence supports the district court's finding that Grant was able to consult with and assist his counsel.

Several facts weigh against the district court's competency finding. These facts include the bizarre circumstances of the underlying crimes, previous diagnoses and findings of incompetency, the existence of a special guardian empowered to make Grant's medical decisions, Grant's refusing to speak to counsel outside of court, and Grant's trial testimony that he believed counsel was involved in the cult. At the final competency hearing, Dr. Norton Roitman testified that Grant suffered from paranoid delusions, rendering him incapable of assisting his counsel.

That being said, several facts weigh in favor of the district court's competency finding. Grant spoke with and passed notes to his counsel in court and spoke with the district court on multiple occasions. One doctor from Lake's Crossing Center, where Grant went for competency evaluations and treatment, testified that the failure of antipsychotic medications to produce any beneficial effect suggested that Grant was not, in fact, psychotic. Further, four doctors from Lake's Crossing found Grant competent at various times in the months and years

preceding the final competency hearing in January 2012. All four of these doctors came to the same conclusion: Grant was able to assist his counsel but chose not to do so. At the January 2012 competency hearing, Lake's Crossing doctors testified that Grant suffered from a paranoid personality disorder that made him distrustful but did not prevent him from cooperating with counsel. Grant could "turn[ ] off his" suspiciousness at will to meet his needs. One doctor testified that Grant bragged that he had Lake's Crossing "in a scramble" and said a speedy trial was not necessarily a good thing. These statements gave the doctors the impression that Grant chose not to cooperate with his counsel or the competency evaluation process to delay the proceedings and exert control over his circumstances. The doctors did not observe any symptoms of paranoid delusions that might prevent Grant from cooperating with his counsel.

Although Dr. Roitman testified that Grant's refusal to cooperate with his counsel was beyond Grant's control, the Lake's Crossing doctors testified that Grant simply chose not to cooperate and could change his mind. It is the district court's task to resolve conflicts in the evidence regarding competency, *Tanksley v. State*, 113 Nev. 844, 847, 944 P.2d 240, 242 (1997), and we conclude that substantial evidence supports the district court's competency finding, see *Calvin v. State*, 122 Nev. 1178, 1182, 147 P.3d 1097, 1099 (2006).

To the extent Grant argues that the district court abused its discretion by failing to hold another competency hearing closer to trial, we disagree. Grant's counsel expressed ongoing competency concerns, but Grant's condition and behavior had not changed, and we cannot conclude that the district court abused its discretion by refusing to hold another

competency hearing simply because Grant continued his difficult behaviors. *See Melchor-Gloria v. State*, 99 Nev. 174, 180, 660 P.2d 109, 113 (1983).

*The district court properly allowed Grant to prevent his counsel from pleading not guilty by reason of insanity on Grant's behalf*

Grant next contends that even if the district court properly found him competent to stand trial, he was incompetent to decide whether to plead not guilty by reason of insanity.

As an initial matter, Grant argues that preventing his counsel from pleading not guilty by reason of insanity on his behalf turned the trial into a farce. Because the jury found Grant not guilty of attempted murder and did not find the deadly weapon enhancement on the kidnapping or assault charges, we reject this argument.

We have stated "that if a defendant is mentally competent to stand trial, . . . the defendant has the *absolute right* to prohibit defense counsel from interposing an insanity defense." *Johnson v. State*, 117 Nev. 153, 163, 17 P.3d 1008, 1015 (2001) (emphasis added). "[T]he forced imposition of the insanity defense over the express objections of the defendant is structural error requiring reversal." *Id.*

Grant argues that *Johnson* is distinguishable because the defendant in that case claimed self-defense, whereas Grant offered no alternative theory of the case. Our decision in *Johnson*, however, depended on the "grave and personal" nature of risking long-term institutionalization and social stigma by pleading not guilty by reason of insanity, not the existence of an alternative theory of the case. *Id.* (internal quotation marks omitted). We therefore reject this argument.

Grant also asks this court to overrule *Johnson*. Grant relies on *Indiana v. Edwards*, 554 U.S. 164, 178 (2008), wherein the United

States Supreme Court held that states may compel defendants who are "competent enough to stand trial under *Dusky* but who ... are not competent to conduct trial proceedings by themselves" to be represented by counsel. Whether to plead not guilty by reason of insanity may be a complicated choice, but it is not nearly as nuanced as "the significantly expanded role required for self-representation." *Id.* at 176 (internal quotation marks omitted). We therefore conclude that *Edwards* does not require us to revisit *Johnson*.

Grant also relies on *Florida v. Nixon*, 543 U.S. 175 (2004). In *Nixon*, the Court held that the defendant's express consent was not required for counsel to pursue a concession of guilt strategy. *Id.* at 189; *see also Armenta-Carpio v. State*, 129 Nev., Adv. Op. 54, 306 P.3d 395, 398-99 (2013). *Nixon* involved a defendant who neither consented nor objected, whereas Grant expressly and repeatedly objected to pleading not guilty by reason of insanity. Therefore, *Nixon* is inapposite, and we decline to rely on it to overrule *Johnson*. *See Armenta-Carpio*, 129 Nev., Adv. Op. 54, 306 P.3d at 398.

In conclusion, after finding Grant competent to stand trial, the district court properly protected Grant's "absolute right to prohibit defense counsel from" pleading not guilty by reason of insanity. *Johnson*, 117 Nev. at 163, 17 P.3d at 1015.

*The State's cross-examination of Dr. Roitman did not implicate Grant's right to post-arrest silence*

Grant also argues that the State violated Grant's Fifth Amendment right to post-arrest silence by asking Dr. Roitman whether he spoke to Grant.

Although "a defendant has the Fifth Amendment right to remain silent during a *court-ordered* psychiatric interview," *Gallego v.*

*State*, 117 Nev. 348, 361, 23 P.3d 227, 236 (2001) (emphasis added), *abrogated on other grounds by Nunnery v. State*, 127 Nev., Adv. Op. 69, 263 P.3d 235, 253 n.12 (2011), Grant does not contend that Dr. Roitman attempted to interview him pursuant to a court order. Moreover, "[d]ue process restrictions apply only to activities which can be characterized as state action," *Tarkanian v. Nat'l Collegiate Athletic Ass'n*, 103 Nev. 331, 335, 741 P.2d 1345, 1347 (1987), *rev'd on other grounds*, 488 U.S. 179, 199 (1988), and Grant fails to explain how Dr. Roitman, the defense-retained psychiatrist, qualifies as a state actor. Grant relied upon the Fifth Amendment in refusing to speak to Dr. Roitman, but the Fifth Amendment did not in fact provide Grant the right to refuse to speak to Dr. Roitman. Thus, the State's asking Dr. Roitman whether he spoke to Grant did not implicate Grant's Fifth Amendment right to post-arrest silence. *See id.*

We also note neither the State's questions nor Dr. Roitman's answers suggested that Grant refused to speak to Dr. Roitman, let alone why he did so. Moreover, the State sought to impeach Dr. Roitman's opinion on Grant's mental state, not Grant's own account of events. *Cf. Doyle v. Ohio*, 426 U.S. 610, 616-19 (1976) (holding that the Fifth Amendment prohibits cross-examining a defendant regarding his post-arrest silence to impeach his trial testimony); *People of Territory of Guam v. Veloria*, 136 F.3d 648, 651-52 (9th Cir. 1998) (holding that the Fifth Amendment prohibits impeaching a defendant's trial testimony through a police officer's testimony about the defendant's post-arrest silence). We therefore conclude that the State did not violate Grant's Fifth Amendment right to post-arrest silence by asking Dr. Roitman whether he spoke to Grant.

*The district court did not err by failing to record bench conferences*

Grant also claims that his convictions must be reversed because the district court failed to record bench conferences. First, the district court never prevented counsel from making a record regarding any bench conference. *See Preciado v. State*, 130 Nev., Adv. Op. 6, 318 P.3d 176, 178 (2014) (stating a district court should allow parties to make a subsequent record regarding unrecorded bench conferences). Second, Grant fails to point to any specific bench conference, suggest how any unrecorded bench conference relates to any other issues on appeal, or show "the record's missing portions are so significant that their absence precludes . . . meaningful review of the alleged errors . . . and the prejudicial effect of any error." *Id.* Accordingly, Grant has failed to satisfy his burden of demonstrating that the district court's failure to record bench conferences mandates reversal.

*The district court erred by shackling Grant during trial, but this error was harmless*

Finally, Grant argues that he is entitled to a new trial because the district court improperly shackled Grant during trial. Although we conclude that shackling Grant during trial was unconstitutional, this error was harmless.

"A defendant has a constitutional right to appear before the jury without physical restraints" absent "exceptional circumstances." *Chandler v. State*, 92 Nev. 299, 300, 550 P.2d 159, 159 (1976). Rather than finding exceptional circumstances, the district court blindly applied a jail policy requiring defendants who chose to wear jail uniforms during trial to also wear shackles. This policy cannot alone justify physically restraining a criminal defendant in front of the jury. We therefore hold

that the district court erred by requiring Grant to stand trial in shackles. Nevertheless, we conclude this error was harmless.

Shackling is disfavored because "[t]he sight of physical restraints may . . . erod[e] the presumption of innocence." *Hymon v. State*, 121 Nev. 200, 207-08, 111 P.3d 1092, 1098 (2005). Here, Grant chose to wear his jail uniform at trial, so the jury already knew he was in custody. Thus, unconstitutionally shackling Grant caused little—if any—additional harm to the presumption of innocence. *See id.*; *see also Wilkerson v. Whitley*, 16 F.3d 64, 68 (5th Cir. 1994) (holding that improperly shackling a defendant throughout trial was harmless where the jury already knew the defendant was an inmate and the evidence of guilt was overwhelming). In addition, the evidence of Grant's guilt was overwhelming: there was no dispute about Grant's identity or level of participation in the charged crimes and Grant himself testified to many elements of the crimes. Thus, we conclude that shackling Grant, although unconstitutional under these circumstances, was harmless.

Accordingly, we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

cc: Hon. James Crockett, District Judge
Christopher R. Oram
Attorney General/Carson City
Clark County District Attorney
Eighth Judicial District Court Clerk